Now we'll go to our final case of the day, 24-4094, Standard Insurance v. IRS. May it please the Court, Christopher Bays for the Appellants. I'd like to reserve three minutes for rebuttal. You saw how that works. Yes, I did, Your Honor. Thank you, Your Honor. The IRS obtained plaintiff's documents and information unlawfully. The plaintiffs want those documents and information back. The IRS also made a determination that Plaintiff Standard Insurance's company is not an insurance company, notwithstanding that the Utah Insurance Department has, one, approved Standard Insurances to operate as an insurance company in the State of Utah. Two, approved Standard Insurances lines and limits of coverage. And three, has further declared that Standard Insurances is an insurance company organized, operated, and regulated under Utah law. Plaintiffs want a declaration that that determination violates federal law. Plaintiff's requested relief does not seek to restrain the assessment or collection of taxes. They want their documents and information back. And they want a declaration that Standard Insurances is a legitimate, lawfully recognized Catholic insurance company as determined by the Utah Insurance Department. This Court should reverse. Let me talk about, ask about the, whether it's a legitimate insurance company. It's still licensed in Utah. It can still operate as an insurance company, is that correct? Yes, it would still be licensed and would theoretically have the ability to operate in Utah, that's correct. The IRS just doesn't think that the premiums paid should be deductible and that the receipt of the premium should be taxed as income. That's the issue before the IRS. That's the issue before the IRS. But getting in a little bit into the merits of our argument with regard to the McCarran-Ferguson Act, that act, of course, provides that an act of Congress shall invalidate, impair, or supersede a state law going to the regulation of business. So yes, Your Honor, what the IRS is saying is you're not an insurance company, therefore the insurance company's income is not deductible. Also that the insured entities' premium deductions are not deductible. That's what the IRS is saying. And our argument on the merits as to the McCarran-Ferguson Act is that that would very much impair what Utah is trying to do here with its Captive Insurance Company Act. Utah has set up a comprehensive regulatory scheme that allows captive insurance companies to form. There are numerous onerous requirements that companies must go through, proofs that they must submit to the Utah Insurance Department. They must also submit annual reports. It's a very detailed and lengthy process. Utah has a policy of saying we want to have captive insurance companies here in Utah. We think this is good for Utah business. And what the IRS is doing here, the IRS is saying notwithstanding that Utah has set up this comprehensive regulatory scheme, notwithstanding that Utah has said U-Standard insurances has satisfied the requirements of Utah law, including capitalization requirements and so forth, notwithstanding all of that, you're not an insurance company, therefore you cannot deduct your income, and also your insured entities cannot deduct their premiums. It actually places standard insurances and the people who receive insurance from standard insurances in a worse place than they would have been had they gone through the captive insurance process. Because had they gone, for instance, to outside insurance, they would have at least been able to deduct their premium. Is the IRS saying all microcaptive insurance companies in Utah are not insurance companies, or are they just saying that standards version of a microcaptive is not permissible? So the deficiency determination in this case is just for standard insurances. As we discussed in the complaint, and as is clear, after that notice 2016-66 went out, companies, microcaptive companies, started reporting the reportable transaction information to the IRS. The IRS then sent out letters to all of those companies saying, hey, we think that what you're doing is inconsistent with what's permitted under the tax code. You can either cease operations or you can be subject to further investigation and penalties and fines by the IRS. So the deficiency determinations here are specifically with respect to standard insurances. But when you look at what the IRS has been doing here, sending out these letters to, as far as we can tell, all of the captive insurance companies who had responded to this, who had provided information pursuant to this 2016-66 notice, it really is going after captive insurance companies. If you get a reversal here, the remedy would essentially redefine the company as a legitimate insurance company. Yet we have a tax court proceeding that's assessed the tax. Wouldn't your remedy necessarily impede the collection of a tax? And if the answer to that is yes, does that matter? So the answer to your question is no. The IRS gave multiple reasons in the notices of deficiency for why it was disallowing the deductions. One of them was its determination that standard insurances is not an insurance company. It gave five other reasons as well. It said that the transactions lacked economic substance, that they were engaging for another purpose than avoiding taxes. They were all based, I suspect, on their view that these premiums are twice as high as the insured used to pay, and that's something that's very suspicious with captive insurers, because when it's a captive insurance company, there's no incentive to keep premiums at market rates. It's good for both entities if the premiums are doubled or higher than they should be. That's the essence of the concern of the IRS. And either it's consistent with their being licensed in Utah, that they be subject to taxation because of this inappropriate behavior, or what? Why can't—are you saying that the IRS could not—let me start over. Let's say you get a declaratory judgment that Standards is a legitimate insurance company. Doesn't that preclude, or does it preclude, the IRS from pursuing a tax claim against Standards because it's not—it doesn't match the requirements under federal law for premiums to be deductible and for the receipt of premiums to be treated as not income? The IRS gave multiple reasons for disallowing the deductions. And when you drill down on the reasons that the IRS gave, so there are illustrative notices of deficiency in the record. One of those, which is regard to Standard Plumbing, which is one of the insured entities, goes into detail about two of the reasons that the IRS gave. One was that the transactions lacked economic substance, and another is that Standard Insurance is not an insurance company. The reasons the IRS gave for those two reasons are different. When it said that the transactions lacked economic substance, it pointed to things such as that the amount of premiums paid in exceeded the amount of claims paid out, that Standard Insurance had policies for items that did not have a history of loss, that the premiums were higher than you would find on the third-party insurance market. Those were the reasons it gave for why they lacked economic substance. The reasons the agency gave for why it was not an insurance company were different. The agency said things like that there wasn't sufficient risk distribution, that they insured things that were not actually insurable risks because they were within the company's control, or because they weren't, I think the word they used was fortuitous, such as a potential risk of audit. It said that they didn't have sufficient liquidity at certain points to pay out expected losses. If the IRS had just given one reason that they're not insurance companies, then would you be barred from bringing a declaratory judgment? So that would get into the question of the downstream effect, right? So what CIC Services says is that you look at what the relief is requested, that the downstream effect of that might be that would have a tax effect. That's what you're looking at. You're looking at the relief requested. Certainly, Your Honor, if the only reason that the agency had given was that Standard Insurance was not an insurance company, I think that would be a closer case. That would certainly be a more difficult case for us because there would be a closer nexus between the relief that we're seeking here and what the outcome would be in those tax court cases. But certainly on this case, on the facts here, the relief that we're seeking doesn't, will not lead to a particular outcome in the tax court cases. And in order to decide this case in my client's favor, the court need not go down the road of if there were only a single reason because here there were multiple reasons. Let me ask this. If the IRS or the tax court ultimately required the insurance companies to pay taxes for all the other reasons, would that hurt your status as an insurance company in Utah? So, for instance, if the IRS were to say that the, just an example I just gave, if these transactions lacked economic substance, if that was the basis of, I mean, so it certainly would, it certainly would have an impact on our ability to continue operating because as I mentioned earlier, it would place us in a worse position than if the, if we had just gone to get third-party insurance. But it wouldn't necessarily be getting with the, with a problem under the McCarran-Ferguson Act because that's what the agency would be ruling on that scenario is the specifics of those transactions and whether the specifics of those transactions satisfied the economic substance test or the ordinary and necessary business expenses test. It wouldn't be getting into whether it's an insurance company. That's the conflict that we see here is that you have Utah, which has set up this comprehensive regulatory scheme, has approved us as an insurance company, has approved our lines and limits of coverage and then said that we're an insurance company. And then the IRS comes in here and says, you know what? We don't care what Utah has done here. We don't care that you've met the requirements under Utah law to operate as an insurance company. We don't care about any of that. We don't think you're an insurance company, and therefore we're. Counsel, can I ask you, I'm sorry, about CIC services? How should we be thinking about the timing or the sequence of this case as compared to CIC services in that here it's the taxpayer, not the material advisor who brought suit, but the production of the documents has already occurred. The tax has already been assessed and collected. So it seems to be a pretty big difference with CIC services. So how should we think about those differences? So CIC services did not turn on whether it was a material advisor or a taxpayer. Justice Sotomayor had a concurrence where she suggested that maybe it might. No one else joined her, and that was just basically dicta that she had in a concurrence there. As to the timing differences, what CIC services says is you look at the relief sought. And I think that if you start thinking too much about like, okay, well, we see that this was brought at this specific stage of the suit, therefore that must give us some inference about the reasons why this relief was sought in this case. I think that's getting too far down the line into what the subjective intent was. And in CIC services, so, yes, in that case it was earlier in the process, but still the ultimate end of the relief that was sought there in validation of the notice, that would have prevented the IRS ever from assessing the tax penalties that were at issue in that case. So, yes, the timing is different here, but the ultimate relief that was at least potentially at issue in CIC services, you know, again, different facts, material advisor and so forth, but still would have been an assessment of tax. I just have about two minutes left I'd like to, okay. I'll give you a little time. Your other relief you seek is the return of the documents, but your brief says that the IRS could subpoena those documents. Would there be any restrictions on those subpoenas? So, in tax court, the discovery rules are not identical, but they have similar standards as in civil discovery. The document requests must be relevant. They must be proportional to the needs of the case. Even before you get to tax court, IRS can ask you to produce records, can it not? So, yes, they can bring what's called a summons enforcement proceeding. So, would that be barred in this case? Could they issue new summonses and say, before you, you know, we have these records, we'll return them to you, but in the interim, we're summoning you to produce these records. Would there be anything wrong with that? Well, the audit's already concluded. So, I don't know offhand if the IRS could reopen it and issue a subpoena in that case. That would obviously be a different factual scenario than we have here since the audit is computed. And there are grounds on which you can challenge. So, what you were saying is they could get it through discovery in the tax court? Yes, yes. And that's why our request of relief would not translate to a particular outcome in the tax court cases, because even if we get the request of injunction that they have to return their unlawfully obtained documents, information, they would be able to obtain them through discovery in tax court. So, what good does it do you to get this relief? Well, again, the standards in discovery have to show proportionality, relevance to the subject matter. We have the ability to interpose objections. So, we certainly have our concerns. We've identified in our brief about data privacy and so forth. I think that those are our real concerns. We don't know how the discovery process would necessarily play out in tax court. If we were to get the documents back, they were to submit discovery requests, and we would perhaps interpose objections. That would, of course, depend on what their discovery requests were, what objections we might interpose, and how, if there were a dispute, the court might rule on the proportionality and relevance of whatever those questions were. Is there an exclusionary rule in tax court where the fact that these documents were obtained unlawfully would preclude them from being used in the tax court proceeding? The IRS argues in its brief that there is an exclusionary rule. I have not myself litigated in tax court. I don't have reason to believe that the IRS says representation is not correct. May I ask a question? Outside of this federal court action, do you have the ability to vindicate your argument about the merits of the captive insurance company through the tax court system and subsequent appeals? So, in tax court, we certainly can challenge the IRS's determination. So, we've explained in our brief why we don't think that's not sufficient, or why that's different from the relief they're requesting here, which is a declaration that Santorini Services is a legitimate and lawfully recognized captive insurance company. I'm just wondering if there's an alternative forum for you to make that substantive argument, an appeal from the tax court presumed to come back to the Tenth Circuit, right? Tenth Circuit, maybe also DC Circuit. I don't know exactly how the jurisdiction works there. But that would, of course, be an appeal from the tax court's determination as to the specific reasons given in the notice for deficiency. Okay. Thank you, Your Honors. Is it Klymus? It is. Yes, Your Honor. Thank you. May it please the Court, Jeff Klymus for the United States. Shortly after receiving notices of deficiency and petitioning the tax court to redetermine the associated tax liabilities, the plaintiffs brought this suit seeking to invalidate the court determination undergirding the IRS's liability determination and to take away the documents on which that determination is based. The district court correctly held that the plaintiffs requested relief, would restrain the assessment of taxes, and was therefore barred by the Ante and Injunction Act and the tax exception to the Declaratory Judgment Act. Would you restate the first point? Are you saying that if they prevail on the first issue that we've discussed regarding whether it's a legitimate insurance company, that that would foreclose the tax court proceeding? The central issue in the tax court proceeding is whether or not Standard Insurances is in substance a bona fide insurance company. If the district court were to enter a declaratory judgment that Standard Insurances is a bona fide insurance company, that's going to be collateral estoppel against the government and the tax court case. It's going to take the tax court case merits determination away from it. Well, counsel is saying there's several other grounds that they could lose on. Why do you say that that couldn't happen? So two points. The first of which is there are essentially spokes on the same wheel, right? The notices of deficiency talk about what are the insurance arrangements, what is the nature of the insurance company, which is the relevant test under this court's decision in Reserve Mechanical, the Supreme Court's decision in Bowers v. Lawyer's Mortgage Company, is what is the substance of the transaction? So they say the insurance arrangements lacked economic substance because they weren't really insurance arrangements. They say the substance didn't comport with the form because they said the form is represented to be an insurance company, but the substance is that it's not actually an insurance company. The transactions were engaged in solely to avoid or evade tax because they held themselves out as being insurance arrangements, and in fact that was not the real purpose or effect of the arrangements. The insurance premiums were not paid to an insurance company because this was not insurance in substance. They were not paid for insurance because, again, the arrangements did not in substance constitute insurance. These are all spokes on the same wheel. This is the core underlying determination that is the reason why the tax court case exists. It's because the IRS said this is not real insurance. Well, does the fact that these companies were licensed as insurance companies in Utah have any implications for the tax court? Did they make a finding that these transactions did have a legitimate economic purpose? Or I'm not sure how one goes about getting licensed as an insurance company. There is some determination that the Utah Insurance Department makes about whether it's going to issue an insurance license or not. That said, that's not binding for federal law. That's not binding on the United States. And so that is a factor. If you look at the Reserve Mechanical Opinion, it talks about compliance with local licensing requirements as being a factor that would count in standard insurance's favor in this case, but it is not dispositive of the issue. It's one factor among many in determining what the arrangements constitute in substance. I would also note that the Supreme Court in American Friends talked about a suit to restrain collection of tax. And in that case, there was a similar argument being made. They said, look, we are only seeking to enjoin the IRS or our employer from withholding taxes from our paychecks, but the IRS can still collect by levy. The IRS is not fully and completely foreclosed from collecting the taxes because there are two ways to do it, probably more than that, and we're only seeking to enjoin one. And the Supreme Court in American Friends said enjoining one method of collection is a suit brought for the purpose of restraining collection. Similar, we would say that even if there were multiple bases listed in the IRS's notices of deficiency that were not interrelated, a suit to restrain, a suit to enjoin, a suit to declare invalid one of those determinations is going to restrain assessment on its face, that the purpose would be to restrain assessment because that's the only reason these notices of deficiency and these determinations exist at all is for tax purposes and is a prelude to the assessment of tax. But didn't the government lose that argument in CIC services? I mean, I read the district court's order to rely a lot upon our decision at Lowry and the activities leading up to the assessment and collection language. But I think a fair reading of CIC services could be that the Lowry test is maybe in trouble. So how do you respond to or get around CIC services? So, two points. We would start by saying that we think that Lowry and green solutions in those cases are good law, but the court doesn't actually have to reach that issue. One of the key factors that the Supreme Court talks about in CIC services is what stage are you at? And it says that matters. That's the second factor it looks at, and this is pages 220 to 221. It reaches this conclusion that says CIC stands nowhere near the cusp of liability. And it starts by saying the reporting rule and the statutory tax penalty are several steps removed from each other. It lists three steps that have to occur prior to the imposition of the tax penalty and then says that threefold contingency matters in assessing whether the Anti-Injunction Act applies. Where you are in the process matters for the purposes of the Anti-Injunction Act under CIC services reasoning. And what we have here is someone who is truly on the cusp of tax liability. When the IRS issues a notice of deficiency, what that does is it gives the taxpayer 90 days to go into tax court. If the taxpayer does not file a tax court petition within 90 days, the IRS shall assess that tax. This is what 6213A of the Internal Revenue Code says. It's lighting a fuse and says you have 90 days to go into court or there will be an assessment. It is the last step that the IRS typically takes before making an assessment. The only way to prevent the assessment at that point is to file a tax court petition, which is actually a specifically enumerated exception to the Anti-Injunction Act. 7421A specifically lists a tax court petition under 6213A as an exception to the Anti-Injunction Act because they know that a tax court petition in and of itself restrains assessment of taxes and then what determines whether an assessment will be made is the tax court's decision under 6215 of the code that if the tax court disallows the deficiency in whole or in part, that shall not be assessed. If the tax court sustains the deficiency in whole or in part, that shall be assessed. This is the final step. This is the final stage. And CSE Services talks about this in terms of steps. How many steps are remaining when you're talking about being on the cusp of assessment and the cusp of liability? It doesn't measure this in days or weeks or years. It measures this in terms of steps. And this is the only step that remains, the tax court proceeding. And what we have is essentially a bundle of sticks that make up the government's case in that tax court proceeding and plaintiffs file a separate suit where they are trying to pull those sticks out one by one. Every argument that they make here in this case in terms of trying to pull out those sticks is an argument that they can absolutely make in their pending tax court case. They can argue that the McCarran-Ferguson Act precludes the IRS's determination. They can argue that this is a real insurance company. They can argue that the information and documents that the IRS has should be suppressed or excluded. We've cited cases in which all of these arguments have been made in tax court cases or alternatively in refund suits. The plaintiffs here had a choice about which form to bring their suit. They could go through door number one, a tax court petition, or they could go through door number two, a district court refund suit or a court of federal claims refund suit. They chose door number one and one of the core purposes of the Antean Junction Act is to channel tax disputes into the forum that Congress has provided. The plaintiffs have a forum, the forum that they chose, the forum that Congress laid out. They don't need a parallel suit in which they are seeking to undermine the government's ability to prevail in the tax court proceeding. They pick their forum and they should stick in that forum. Do you think it makes a difference that in CIC services the suit was brought by the material advisor and not the taxpayer? We think it matters that it's a step further, but that's not the only difference. We think that the stage at which the lawsuit was filed matters more, but we do think the step from being a material advisor to a taxpayer is significant. And is it significant for the reason you just said about the different options a taxpayer may have compared to a material advisor as to how to challenge any assessment or collection? That is certainly a portion of it. What I think is more important is that there's no tax being determined against the material advisor itself. This is a statutory penalty for a violation. And so you would say, well, in order for any liability to attach, you actually have to have a violation of the reporting requirement before you even start talking about the potential, this threefold contingency, of coming down to the possibility of assessment and imposition of liability. The liability of a taxpayer under the Internal Revenue Code, taxpayers like the plaintiffs here and like standard insurances, is determined as a matter of law. There doesn't have to be some kind of a violation for this information to be relevant, for these determinations to be relevant, because you're just applying the law to what the taxpayer has already done. We're not looking for a violation, something to happen. It's just how do you apply the code to the arrangements and transactions that have already occurred? We would note that in terms of requesting relief related to documents and information, the purposes that are being put forth on appeal, not only were they not raising an appeal, they were nowhere in the complaint. If you look at standard insurance's complaint, nowhere do they say anything about privacy, hacking, sharing with other government agencies. If you search for those words, you will not find them. You will, however, find the word tax over 40 times, notices of deficiency four times, tax court three times. Over and over again, they talk about the tax consequences. They link the documents to the notices of deficiency and to the tax court proceedings. They do this in paragraphs 74 and 75. They do this in paragraphs 90 and 91. They talk about the very specific tax consequences that do not ignore to the plaintiffs over and over again. They do it in paragraphs 58 and 59. And again, in paragraphs 104 and 108, they talk about the ineligibility for what they call the rights and privileges available under Section 831 A and B. Those rights and privileges are tax benefits, tax benefits that they claimed and the IRS disallowed. This is a case about taxes. They say it over and over again in their complaint, and the non-tax purposes that they're now talking about are nowhere to be found. CIC Services says to look at the face of the complaint, look at the claims asserted, the injuries alleged, and most importantly, the relief sought. What they're now doing is saying to look outside the complaint because they did not have these purposes in mind when they brought the suit. That is reinforced by the timing and the stage at which this lawsuit was filed, immediately after the notices of deficiency were issued and they ran into tax court to challenge them. We'll just touch briefly on the South Carolina exception to the Anti-Injunction Act. What this court said in Amborbs, which is backed up by what the Fourth Circuit, the Ninth Circuit, the Sixth Circuit, and the E.C. Circuit have all said, is that a plaintiff can only avail itself of the South Carolina exception if it has no access to judicial review at all. That is consistent with what the Fifth Circuit said in Westmoreland Coal, the case that plaintiffs cite in their reply brief, which dealt with a coal mining company's obligations under the Coal Act, some of which were treated as taxes. Congress provided that the exclusive way for a coal company to challenge its Coal Act obligations was an 1141 claim in bankruptcy. The Fifth Circuit then said, well, if the Anti-Injunction Act precludes an 1141 claim in bankruptcy, then the coal company will literally have no forum in which to raise its claim because the exclusive way to raise this claim is an 1141 action, and it found that the South Carolina exception applied in that case. That is completely consistent with all those other cases, including this court's decision in Amborbs. We also note that what the plaintiffs appear to be arguing is that if there's not an adequate remedy, then the South Carolina exception applies and the Anti-Injunction Act no longer kicks into voracy. The problem with that logic is that one of the jurisdictional prerequisites to equity jurisdiction for a court to be able to enter an injunction at all is irreparable harm, which by definition means there is no adequate remedy. If there's an adequate remedy, then the harm is not, by definition, irreparable. Under their theory, if we say that there's equity jurisdiction because there is no adequate remedy, then by definition the South Carolina exception applies and the Anti-Injunction Act doesn't kick in. But that just means that any time a plaintiff can seek an injunction, then the Anti-Injunction Act doesn't bar the suit. And that doesn't make any sense at all because that would reduce the Anti-Injunction Act to dust. We know that the plaintiffs have said that this court's decision in Amborbs, whether the plaintiff has any access at all to judicial review, is dicta. It is the standard that this court applied. We will grant that the court could have applied a different standard and reached the same results, but that's the standard that it did apply. That is part of the holding, and it is the holding that every court to consider the South Carolina exception has adopted. And plaintiffs have identified no authority to the contrary. If there are no further questions, we would ask that the district court's decision be affirmed. Thank you. Counsel, your time to make your own arguments has expired, but if you want to rebut anything that was said by opposing counsel, I'll give you a couple minutes for that. Thank you, Your Honor. Plaintiffs here have alleged a variety of non-tax harms, specifically with regard to the request for a declaration that Standard Insurance is a legitimate insurance company. We've explained that this would cast into doubt a lot of their contracts, a lot of their business operations. That's in the complaint. My colleague argued that those are completely new on appeal. In our complaint, we said that our injuries from the IRS's unlawful actions include, among other things, this is page 31 of the appendix, loss of existing insurance or calling the same into question and potential breaches of contract with respect to insurance. Again, on page 34, the claim alleges that the IRS's determination that Standard Insurance is not an insurance company leaves all policyholders in a perilous position of endless limbo. So we certainly did allege in the complaint that that determination was going to cause significant problems for us, including with regard to our contracts that we have with other entities. Is Standard subject to Utah State tax liability? The Utah Insurance Department, there's been no request or effort by Utah, to my knowledge, to disallow their favorable tax treatment under Utah law. The way it works in Utah is if you're approved as a capital insurance company by the insurance department, rather than paying the taxes on the income, you just pay a flat fee. So they still get their tax benefit under State law? Yes. I'm not aware of that. Regardless of what the IRS is doing to the company? That's my understanding. Yes, Your Honor. Judge Hartz, you had asked about what's required under Utah law to be noticed as a capital insurance company. I can just point, Your Honor, to the relevant statutory site. Interpret it for me. So it's Utah Code, Title 31A, Chapter 37. So you have to submit an application where you provide a whole bunch of financial information. You have to provide evidence of the expertise of the person who's going to run the company. You actually have to go find an independent consultant and have them do a feasibility study that's going to discuss the rates, the rate structure, premiums. Then you have to submit annual reports that includes the company's financial information, balance sheets, and so forth. You have to have an auditor by an independent auditor who's been recognized by the Utah Insurance Department. My client has gone through all of that. Senator's insurance has now paid out over $9 million in claims. Even under the IRS's new regulations, it wouldn't even be required to report because the losses that it's paid out have now exceeded the percentage threshold for that loss ratio. So capital insurance is limited to insurance. Thank you, Your Honors. Thank you, counsel. Case is submitted. Counselor excused.